IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JEROMIE LASSEN,                        )
                                       )
              Plaintiff,               )
                                       )   CIVIL ACTION
v.                                     )
                                       )   No. 06-4025-JAR-JTR
                                       )
JO ANNE B. BARNHART,                   )
Commissioner of Social Security,       )
                                       )
              Defendant.               )
_____ )


REPORT AND RECOMMENDATION


      Plaintiff seeks review of a final decision of the

Commissioner of Social Security (hereinafter Commissioner) denying

disability insurance benefits (DIB) and supplemental security

income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of

the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred

to this court for a report and recommendation.  The court

recommends the Commissioner's decision be REVERSED and the case be

REMANDED for further proceedings.

I.    Background

Plaintiff's applications were administratively denied.  (R. 15, 25, 26, 935, 936).  He requested and was granted a hearing before an Administrative Law Judge (ALJ) on Dec. 14, 2004.  (R. 15, 55, 944-63).  Plaintiff appeared with a non-attorney representative and testified at the hearing.  (R. 15, 944-45).  Plaintiff's mother and a vocational expert also testified.  Id. The ALJ issued a decision on Mar. 23, 2005 finding plaintiff not disabled and denying his applications.  (R. 15-24).

The ALJ determined the work plaintiff performed after the alleged onset of disability on Jun. 1, 2001 was an unsuccessful work attempt, and found no substantial gainful activity thereafter.  (R. 16).  He found that plaintiff has a combination of severe impairments consisting of:  diabetes mellitus with retinopathy, status post cataract removal bilaterally, status post corneal ulcer in the left eye, nephropathy, obesity, and depression.  (R. 19).  He found that plaintiff's alleged hand problems are not medically determinable impairments, and that plaintiff's hypertension and healed ankle fracture are not severe impairments within the meaning of the Act.  Id.  He determined that plaintiff's impairments do not meet or medically equal the

severity of any impairment in the Listing of Impairments, specifically mentioning the listings at 9.08, 2.00, and 12.04.

The ALJ determined that plaintiff has a residual functional capacity (RFC) meeting the exertional requirements of sedentary work, but is prohibited from climbing ropes, ladders, and scaffolds, and is limited to occasional performance of other postural movements. (R. 21). He found plaintiff has no vision in the left eye, no depth perception, and no fine acuity, may not be exposed to hazards such as machinery, and is moderately limited in four of five abilities relating to social interaction. (R. 21). Based upon this RFC assessment, the ALJ found plaintiff is unable to perform his past relevant work, but is able to perform other work in the economy such as work as a ticket taker, a food and beverage order clerk, and a telephone clerk. (R. 22). Therefore, he determined plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 22, 24).

Plaintiff sought and was denied Appeals Council review of the ALJ decision. (R. 11, 7-9). Therefore, the ALJ decision is the final decision of the Commissioner. (R. 7); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

-3-

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

-4-

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.   42 U.S.C. § 423(d); see also, Barnhart v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and inability to work must last twelve months).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.; 20 C.F.R. §§ 404.1520, 416.920 (2004).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the

alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listed impairment, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform his past relevant work, and whether he is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred at step two and step three, erred in evaluating the credibility of plaintiff's allegations of symptoms, failed to properly weigh the medical opinions, erred in applying the psychiatric review technique (PRT) to evaluate the

-6-

severity of plaintiff's mental impairments, and erred in assessing plaintiff's mental and physical RFC.  The Commissioner argues that the ALJ properly weighed the medical evidence and the medical opinions, properly evaluated the severity of plaintiff's impairments and determined they are not of equivalent severity to any listed impairment, properly assessed the credibility of plaintiff's allegations, properly evaluated plaintiff's mental impairments, and properly assessed plaintiff's mental and physical RFC.  Finding that a proper evaluation of the medical opinions is necessary to consideration of each of the other issues presented here, the court will first consider whether the ALJ erred in weighing the medical opinions.

## III. Evaluation of Medical Opinions

Plaintiff claims the ALJ completely failed to discuss the medical opinions of examining physicians Drs. Curtis and Frieman, and therefore failed to provide legally sufficient reasons for the failure to include limitations proposed by those doctors in his RFC assessment.  Plaintiff also claims the ALJ misinterpreted the opinions of examining physician Dr. Meier and failed to consider all relevant factors in evaluating the examining physicians' opinions.  The Commissioner argues that although the ALJ did not

-7-

specifically mention the opinions of Drs. Curtis and Frieman, the

ALJ need not mention every piece of evidence, and the record is

clear that the ALJ did not find sufficient evidence to support the

extreme limitations imposed by these physicians.  Moreover, the

Commissioner argues that the ALJ gave specific, legitimate reasons

for rejecting Dr. Meier's opinions.

In his step three analysis, regarding medical opinions the

ALJ stated:

> No treating or lower level evaluating source has posited
> that the above non-listing level findings, either in
> combination or in light of other non-listed medical
> indictors [sic], impose a level of debilitation which
> meets or equals any of those specified.  Therefore, the
> opinions of the state agency medical consultants are
> given significant weight and the claimant is not
> disabled due to meeting or equaling medical decisional
> criteria.

(R. 19).

Later, after stating his RFC conclusions, the ALJ noted that

he concurred with the opinions of the state agency medical

consultants, that his decision is consistent with their opinions,

and that their opinions "are consistent with the evidence in its

entirety."  (R. 21).  With regard to treating source opinions, the

ALJ stated:

-8-

> The undersigned gives controlling weight to the opinion
> of the treating source opinions whose opinions are
> consistent with the evidence in its entirety.  Based on
> their opinions, the claimant's medical condition has
> improved with medical treatment.

(R. 21).

The ALJ summarized Dr. Meier's opinion that plaintiff is

unable to perform competitive level work because his depression

and personality disorder reduce his ability to interact with

others and reduce his concentration, persistence, and pace.  Id.

He stated that Dr. Meier's opinion is not entitled to controlling

weight because the doctor is not a treating source and the opinion

regards an issue reserved to the Commissioner.  He stated that he

concurred with Dr. Meier's opinions that plaintiff should engage

in mental health therapy, that plaintiff's psychological testing

scores are an underestimate of plaintiff's abilities, and that

plaintiff is not precluded from all work.  Id.

### A.   Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of [a claimant's]

impairment(s) including [claimant's] symptoms, diagnosis and

prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such

-9-

opinions (even regarding issues reserved to the Commissioner) may not be ignored and, unless a treating source's opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  <u>Id.</u> §§ 404.1527(d), 416.927(d); <u>Soc. Sec. Ruling</u> (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2006).  The regulatory factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Serv.</u>, 52 F.3d 288, 290 (10th Cir. 1995)).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of examining physicians are generally given more weight than the opinions of physicians who have merely reviewed the medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it

controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2);

see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings

111-15 (Supp. 2006).

Determination of issues reserved to the Commissioner, such as

opinions regarding:  whether an impairment meets or equals a

listing; plaintiff's RFC; whether a plaintiff can do past relevant

work; how age, education, and work experience apply; and whether a

plaintiff is disabled, will not be given any special significance

or controlling weight. 20 C.F.R. §§ 404.1527(e)(2 & 3),

416.927(e)(2 & 3); SSR 96-5p, West's Soc. Sec. Reporting Serv.

123-24 (Supp. 2006); SSR 96-8p, West's Soc. Sec. Reporting Serv.

150, n.8 (Supp. 2006).

### B.   Analysis

#### 1.   TREATING PHYSICIANS' OPINIONS

The Commissioner's argument that the ALJ need not discuss the

opinions of the examining physicians, and that the record as a

whole does not support those physicians' extreme limitations, in

light of the ALJ's statement that he gave controlling weight to

the treating physicians' opinions might be viewed as an argument

that the ALJ need not discuss the examining physicians' opinions.

The ALJ purported to give controlling weight to the treating

physicians' opinions because they are consistent with the evidence in its entirety, yet he did not state the opinions other than to note that based on those opinions, plaintiff's "medical condition has improved with medical treatment." (R. 21). The court need not determine whether an ALJ's decision to afford controlling weight to a treating physician's opinion eliminates the need to weigh the other medical opinions because the evidence does not support the ALJ's determination that plaintiff's condition has improved with treatment.

The ALJ discussed plaintiff's diabetes, the treatment for that condition, and related issues. (R. 17-18). He noted that plaintiff has diabetic nephropathy with proteinurea but his creatinine clearance is excellent; that there is no evidence of renal artery stenosis; and that a kidney biopsy revealed "arterial sclerosis and arteriolar hyaline sclerosis, moderate to focally severe, . . . arteriorlar [sic] or hypertensive nephrosclerosis involving about one-fourth of the biopsied glomeruli; and, diabetic diffuse mesangial sclerosis, moderately severe." (R. 17)(citing Ex. 15F, 370)(R. 540).

He noted that plaintiff has both proliferative diabetic retinopathy (PDR) and diabetic macular edema (DME) which have

resulted in multiple laser treatments.  <u>Id.</u>  He noted that plaintiff has received steroid injections for chronic macular edema (CME).  <u>Id.</u>  He stated that the claimant "responded nicely" to the injections and, at one point, plaintiff's vision improved within a few days and he was able to return to work.  <u>Id.</u>  He noted that a month after one injection plaintiff "had improved from count fingers to 20/200 in his left eye.  However, over the same month the vision in the right eye had dropped to 20/60."  <u>Id.</u>(citing Ex. 4F, 162)(R. 316).  He cited the physician's report on Jul. 26, 2002 that plaintiff is "apparently 20/25 in the right eye and only counting fingers in his left eye.  The claimant was doing relatively well with his right eye, and his vision fluctuated."  <u>Id.</u>(citing Ex. 5F, 221)(R. 384).  The ALJ documented that plaintiff had cataract surgery bilaterally, and had "reported that he was happy with his improved vision."  <u>Id.</u>(citing Ex. 24F, 458)(R. 651).  The ALJ noted that plaintiff had had corneal ulcers in both eyes, and concluded his analysis, finding that "With medical treatments such as PRP laser treatments and virtrectomy [sic] in his left eye, the claimant's sight has improved."  (R. 18).

The ALJ is correct that after laser treatments and steroid injections, plaintiff's vision improved.  However, as plaintiff argues, the ALJ's summary does not adequately reflect the medical treatment nor the opinions of the physicians.  For example, the following table presents information from the treatment records regarding plaintiff's visual acuity for approximately a one-year period from Dec. 4, 2003 through Nov. 11, 2004.  In the records, CF means Counting Fingers, HM means Hand Movement, but the court was unable to ascertain the meaning of LP.

| Date | Right Eye | Left Eye | Record Page |
|------|-----------|----------|-------------|
| Dec. 4, 2003 | 20/200 | CF 5' | 757 |
| Dec. 29, 2003 | 20/70 -2 | CF 6' | 755 |
| Feb. 26, 2004 | CF 4' | 20/400 +2 | 753 |
| Mar. 1, 2004 | 20/160 +2 | 20/320 | 751 |
| Apr. 1, 2004 | 20/250 | 20/400 -3 | 747 |
| Apr. 12, 2004 | 20/80 -1 | 20/400 -3 | 745 |
| Jul. 1, 2004 | 20/40 | HM 6' | 740 |
| Aug. 12, 2004 | 20/126 | HM 4' | 738 |
| Aug. 19, 2004 | 20/50 | HM 4' | 736 |
| Aug. 23, 2004 | 20/64 +2 | HM | 734 |
| Aug. 26, 2004 | 20/40 | LP HM 3" | 732 |

| Date | Right Eye | Left Eye | Record Page |
|------|-----------|----------|-------------|
| Aug. 27, 2004 | 20/100 –1 | HM nose tip | 730 |
| Aug. 30, 2004 | 80/64– | HM 5' | 728 |
| Aug. 31, 2004 | 20/32 –1 | HM nose tip | 726 |
| Sept. 1, 2004 | 20/40 | HM 2' | 724 |
| Sept. 9, 2004 | 20/32+ | LP HM | 722 |
| Sept. 23, 2004 | 20/80 | barely HM | 720 |
| Sept. 30, 2004 | 20/100 –2 | HM LP | 718 |
| Oct. 7, 2004 | 20/100 –2 | HM | 714 |
| Oct. 14, 2004 | 20/160 –2 | HM 1' | 711 |
| Nov. 1, 2004 | 20/32 +2 | HM face | 707 |
| Nov. 11, 2004 | 20/20 | LP | 705 |

Although the record reveals that plaintiff's visual acuity improves each time he has a steroid injection, thereafter the acuity begins a gradual decrease.  The ALJ acknowledged that plaintiff's vision fluctuates, but he did not explain how this fluctuation would affect plaintiff's ability to work or how it factors into the RFC assessment.  Eight times in a year, the visual acuity in plaintiff's better eye was measured at 20/100 or less.  Moreover, the record reflects twenty-two visits in a one-year period just to the eye doctor, and the ALJ makes no mention of the effect of this frequent treatment on plaintiff's ability to

maintain employment.  Further, the ALJ did not recognize or account for all of the eye doctors' opinions.

For example, the ALJ never mentioned Dr. Carney's letter dated Feb. 6, 2002 in which he stated that plaintiff's visual efficiency is less than 26% in his better eye, and implied that plaintiff's eyes were not "stable enough for optical improvements." (R. 435).  On Oct. 14, 2004, Dr. Dyer stated plaintiff's "vision has continued to drop in his right eye due to exacerbation of his diabetic macular edema." (R. 709)(emphasis added).  The ALJ cited Dr. Dyer's letter of Jul 26, 2002 which indicated that plaintiff's vision is 20/25 in his right eye and he is doing relatively well with that eye.  However, the same letter states the physician's opinion that the "prognosis in both eyes is guarded," and "there is a significant chance that the vision in the right eye could become reduced like it currently is in his left eye at some point in the future." (R. 384).  While the court recognizes that a decision may not be based upon future progression, the ALJ did not account for the progression evident in the record for more than two years after the report cited by the ALJ.  The ALJ did not give controlling weight to the treating

-17-

physicians' opinions.   Rather, he gave controlling weight to his

own medical evaluation of plaintiff's condition.

The medical record reveals the same ambiguity and fluctuation

regarding glycemic control and hypertension control despite the

ALJ's finding that treating physicians opined plaintiff's medical

condition improved with treatment.   On Sept. 27, 2002, Dr. White

reported both hypertension and diabetes to be "poorly controlled."

(R. 553).   On Jun. 23, 2003, Dr. Sindler reported "deteriorating

glycemic control."  (R. 906).   Dr. Sise reported on Dec. 8, 2003

that plaintiff's diabetes was "doing relatively well," but had

"suboptimal control."  (R. 869).   He noted that blood pressure

control "has been quite challenging over this last year."  Id.   On

Mar. 17, 2004, Dr. Sise reported "improving control" of the

diabetes but "still suboptimal control" of hypertension.  (R.

844).   Dr. Sindler reported "excellent glycemic control" on May

12, 2004 (R. 820), but noted a "history of poor glycemic control"

on Sept. 15, 2004.  (R. 783).   The ALJ did not discuss the

treatment notes in any detail.   While the record reveals

improvement on occasion, as cited above the evidence does not

support a finding of progressive or definitive improvement as

implied by the ALJ's statement that plaintiff's "medical condition has improved with medical treatment" (R. 21).

The record evidence does not reveal treating source medical opinions to which the ALJ might have afforded controlling weight as suggested in the decision.  To reach a conclusion of such improvement based upon the ambiguous record, the fluctuating findings, and the equivocal treating source opinions reflected in this record, the court would expect to see the opinions of state agency physicians based upon a review of <u>all</u> of the longitudinal record available, medical expert testimony explaining the conclusions which might be appropriately reached from such an ambiguous and fluctuating record, or a request for such an opinion or clarification from the treating physicians.  No such opinion by a medical expert is present in the record.  Absent such evidence, the record does not support a finding that medical treatment has improved plaintiff's medical condition for more than short or sporadic periods.  The ALJ may "not interpose his own 'medical expertise' over that of a physician." <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1022-23 (10th Cir. 1996) (citing <u>Kemp v. Bowen</u>, 816 F.2d 1469, 1476 (10th Cir. 1987)).  Moreover, the ALJ did not explain

how plaintiff's course of treatment allows for work on a regular and continuous basis.

### 2.   OPINIONS OF DRS. FRIEMAN AND CURTIS

Having determined that the ALJ erred in stating he gave controlling weight to the treating source medical opinions, it becomes necessary to determine whether the failure to discuss and specifically weigh the opinions of Drs. Frieman and Curtis is harmless error as the Commissioner argues.  The Commissioner argues that the ALJ need not discuss every piece of evidence, and any error in not specifically addressing the opinions of Dr. Frieman and Curtis "is harmless in light of the substantial evidence supporting the ALJ's decision."  (Comm'r Br., 15-16). The Commissioner seeks to have the court find that the opinions of Drs. Frieman and Curtis could not result in a disability finding in the circumstances of this case.

The Commissioner is correct that courts have applied harmless error analysis to judicial review of the Commissioner's decisions. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005)(noting that Clifton v. Chater, 79 F.3d 1007 (10th Cir. 1996) does not categorically reject harmless error analysis); Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004)(harmless error

-20-

analysis may be appropriate to supply a missing dispositive finding); <u>Bernal v. Bowen</u>, 851 F.2d 297, 302 (10th Cir. 1988) (harmless error for ALJ rather than psychologist to fill out PRTF); <u>Kerner v. Celebrezze</u>, 340 F.2d 736, 740 (2d Cir. 1965) (no reason the harmless error rule should not be applied in judicial review of an administrative decision); <u>and</u>, <u>Arroyo v. Apfel</u>, No. 99-4060, 1999 WL 1127656, *2 (10th Cir. Dec. 9, 1999) (Where there is substantial evidence in the record to support the ALJ's conclusion, failure to explicitly relate the evidence to the conclusion is harmless error.).  The Tenth Circuit has held that where there is substantial evidence to sustain the ALJ's decision despite an error, the error is harmless, and the court will not remand merely for a ministerial correction.  <u>Wilson v. Sullivan</u>, No. 90-5061, 1991 WL 35284, *2 (10th Cir. Feb. 28, 1991); <u>see also</u>, <u>Fischer-Ross</u>, 431 F.3d at 730 (rejecting a finding which would lead to "unwarranted remands needlessly prolonging administrative proceedings.").

The court finds that application of the harmless error doctrine is not warranted in this case.  The Tenth Circuit has considered the implications of using harmless error analysis to make a finding of fact "on the basis that the missing fact was

clearly established in the record." <u>Allen v. Barnhart</u>, 357 at

1145.

> Two considerations counsel a cautious, if not skeptical,
> reception to this idea.  First, if too liberally
> embraced, it could obscure the important institutional
> boundary preserved by <u>Drapeau's</u> [255 F.3d at 1214]
> admonition that courts avoid usurping the administrative
> tribunal's responsibility to find the facts.  Second, to
> the extent a harmless-error determination rests on legal
> or evidentiary matters not considered by the ALJ, it
> risks violating the general rule against post hoc
> justification of administrative action recognized in <u>SEC
> v. Chenery Corp.</u>, 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed.
> 626 (1943) and its progeny.
> With these caveats, it nevertheless may be appropriate
> to supply a missing dispositive finding under the rubric
> of harmless error in the right exceptional circumstance,
> i.e., where, based on material the ALJ did at least
> consider (just not properly), we could confidently say
> that no reasonable administrative factfinder, following
> the correct analysis, could have resolved the factual
> matter in any other way.

<u>Id.</u>  Here, the Commissioner admits that the ALJ did not discuss

the opinions of Drs. Frieman and Curtis. (Comm'r Br., 15).  In

fact, there is no indication in the decision that the ALJ

considered the physicians' opinions.  He did not summarize the

opinions, he did not discuss the opinions, he did not mention

there are opinions which he considered but did not discuss.

Moreover, as the court's discussion regarding the treating

physicians' opinions suggests, the court cannot confidently say

that no reasonable administrative fact finder could resolve the
factual issues differently than as asserted by the Commissioner
in her brief before this court.

Fischer-Ross does not support a contrary finding.  The court
there quoted the substance of the analysis from Allen v. Barnhart
as quoted above.  Fischer-Ross, 431 F.3d at 733-34.  Based upon
"the ALJ's confirmed findings at steps four and five," and
"indisputable aspects of the medical record," the court found "any
deficiency in the ALJ's articulation of his reasoning to support
his step three determination is harmless." Id. at 735.  The court
concluded that "No reasonable factfinder could conclude
otherwise." Id.  In this case the ALJ's analysis and the record
are not so straightforward as that presented in Fischer-Ross.

Here, the ALJ made no findings, much less confirmed findings,
regarding the records of Drs. Frieman or Curtis; the medical
record here is equivocal; and the record evidence does not point
but one direction.  For example, the ALJ based his step three
conclusion, in part, on the fact that "[n]o treating or lower
level evaluating source has posited that [plaintiff's condition]
. . . meets or equals" a listing.  (R. 19).  Dr. Curtis, however,
opined that "with all the above diagnoses [] Mr. Lassen equals but

does not meet for Depressive Disorder." (R. 596). Although Dr. Curtis is admittedly not a treating or lower level evaluating source, his opinion is directly contrary to that of the state agency medical consultants upon whom the ALJ relied and to the ALJ's step three determination. An ALJ must discuss significantly probative evidence he rejects. Clifton, 79 F.3d at 1009-10(citing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Medical opinion evidence directly contrary to the ALJ's finding is significantly probative evidence and must be discussed. Therefore, the court finds the ALJ's error in failing to consider and discuss the medical opinions of Drs. Frieman and Curtis is not harmless.

### 3.    DR. MEIER'S OPINION

The ALJ discussed Dr. Meier's reports. (R. 18). He stated that visual problems may have affected test results, IQ test scores were average and may have been an underestimate of abilities, physical and depressive symptoms "largely impacted" plaintiff's ability to maintain employment, and that it is unlikely plaintiff could work in most competitive settings. Id. He noted that one month later Dr. Meier stated in a "Request for Medical Statement" from the Kansas Department of Social and

Rehabilitation Services (SRS) that plaintiff's condition prevents gainful employment. (R. 21). He summarized Dr. Meier's opinion that plaintiff is unable to perform competitive level work because plaintiff's depression and personality disorder reduce his ability to interact with others and reduce his concentration, persistence, and pace. Id.

The ALJ determined that Dr. Meier's opinion is not entitled to controlling weight because the doctor is not a treating source and has had only minimal contact with plaintiff. He also discounted the opinion that plaintiff is unable to perform gainful employment because it regards an issue reserved to the Commissioner. He stated that he concurred with Dr. Meier's opinions that plaintiff should engage in mental health therapy, that plaintiff's psychological testing scores are an underestimate of plaintiff's abilities, and that plaintiff is not precluded from all work. Id.

Thus, the ALJ rejected Dr. Meier's opinion that plaintiff cannot perform gainful employment and purported to accept the doctor's alleged opinion that plaintiff is not precluded from all work. (R. 21). As plaintiff points out, Dr. Meier did not state that plaintiff is not precluded from all work. In her Jan. 10,

-25-

2003 statement for the SRS, Dr. Meier stated plaintiff's condition
prevents the performance of gainful employment.  (R. 606).  In her
"Psychological Evaluation" dated Dec. 20, 2002 and signed Jan. 8,
2003, Dr. Meier stated, "It is unlikely [plaintiff] will be able
to work in most competitive settings." (R. 576, 582).  Were the
"Psychological Evaluation" the only report from Dr. Meier, it
might be proper to find that Dr. Meier opined that plaintiff is
unable to work in most competitive settings, but did not opine
that plaintiff is precluded from all work.  However, within a
month (perhaps within two days--based upon the signature dates on
the documents) Dr. Meier opined both that plaintiff is precluded
from all gainful employment and that plaintiff is precluded from
most gainful employment.

Where an ambiguity exists in the medical opinions it is the
ALJ's responsibility to resolve it.  SSR 96-8p West's Soc. Sec.
Reporting Serv., Rulings 149-50 (Supp. 2006).  However, that does
not mean the ALJ may simply choose between the potential
resolutions to the ambiguity presented.  He must explain how he
determined his resolution is correct and explain how the evidence
supports his resolution.  Id.  Here, instead of resolving the
ambiguity, the ALJ implied that Dr. Meier presented two distinct

alternatives and that he merely chose one of the alternatives
presented.  Remand is necessary for the Commissioner to properly
evaluate Dr. Meier's opinions, resolve the ambiguities presented,
and determine the weight to be accorded the opinions.

Proper evaluation of the medical opinions will likely have an
impact on the ALJ's step two and step three determinations, on
application of the psychiatric review technique, and on assessment
of mental and physical RFC.  It may also affect the ALJ's
credibility assessment.  Therefore, it would be premature at this
time to address plaintiff's remaining allegations of error in the
Commissioner's decision.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision
be REVERSED and that JUDGMENT be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) REMANDING this case to the
Commissioner for proper evaluation of the medical opinions and
subsequent re-evaluation of the case beginning at step two of the
sequential evaluation process.

Copies of this recommendation and report shall be delivered
to counsel of record for the parties.  Pursuant to 28 U.S.C.
§ 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the
parties may serve and file written objections to this

recommendation within ten days after being served with a copy.

Failure to timely file objections with the court will be deemed a

waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393

F.3d 1111, 1114 (10th Cir. 2004).

Dated this 2nd day of January 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-28-